1  **CARMEN A. TRUTANICH**, City Attorney (SBN 86629x)
   **GARY G. GEUSS,** Chief Assistant City Attorney
2  **CORY M. BRENTE,** Supervising Assistant City Attorney
   **RICHARD M. ARIAS** Deputy City Attorney (SBN 55416)
3  e-mail: richard.arias@.lacity.org
   200 North Main Street, Room 600, City Hall East
4  Los Angeles, California 90012
   Telephone: (213) 978-7025  Facsimile: (213) 978-8785
5

6  Attorneys for Defendants CITY OF LOS ANGELES, MICHAEL STRONG
   and TYLER BOLING
7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**
10

11  SEAN ROCHA,                        )   CASE NO. CV07-5099 DSF (Ex)
                                       )
12                                     )   Assigned to: Honorable Dale S. Fischer
                                       )   Courtroom: 840-Roybal
13              *Plaintiff,*            )
                                       )   Assigned to: Magistrate Charles F. Eick
14       v.                            )   Courtroom: 20-3rd Floor
                                       )
15                                     )   **DEFENDANTS' MEMORANDUM OF**
    CITY OF LOS ANGELES, MICHAEL       )   **CONTENTION OF FACT AND LAW**
16  STRONG, TYLER BOLING, and          )
    DOES 1 to 10, inclusive,           )   **TRIAL DATE: April 20, 2010**
17                                     )   **TIME: 8:30 a.m.**
                                       )   **PLACE: Ctrm 840 (Roybal)**
18                                     )
              *Defendants.*            )   **PRE-TRIAL CONF.: April 5, 2010**
19  _____  )   **TIME: 3:00 p.m.**
                                           **PLACE: Ctrm 840 (Roybal)**
20

21       Pursuant to the Federal Rules of Civil Procedure, Rule 16, and Local Rule 16-3,

22  Defendants CITY OF LOS ANGELES, a municipal corporation, MICHAEL STRONG

23  and TYLER BOLING, hereby respectfully submit their Memorandum of Contentions of

24  Fact and Law.

25  **I.    CONTENTIONS OF FACT:**

26       On July 22, 2006, at approximately 2:00 a.m., Defendant Officers Michael Strong

27  and Tyler Boling were on patrol in full uniform in a marked black and white patrol

28  vehicle when they received a radio call of a "ADW suspect now".  They immediately

1  proceeded to the address and meet Michelle Johnson, the victim, outside on the curb.

2  She told the officers that the plaintiff, her ex-boyfriend, Sean Rocha, and another of his

3  friends, Shane Montes had been drinking all night long in the plaintiff's living room.

4  The plaintiff began arguing with her. Ms. Johnson stated that Rocha always attempts to

5  start fights when he has been drinking. During the argument, Rocha said, "I think we

6  should kill her", and his friend Montes stated, "Yeah, I think we will kill you". Montes

7  went and got a knife, returned holding the knife and said, "I think I'm going to kill you",

8  and began waving the knife violating at her and began walking towards her. Fearing she

9  was going to be stabbed, Ms. Johnson ran outside, down the driveway and called the

10  police.

11      When the officers arrived, she told them what had happened, gave them a

12  description of the two individuals and said that both were still in the house and no one

13  else was in there. The officers instructed the victim to stand near the patrol car,

14  formulated a plan to apprehend the suspects and proceeded to the front door.

15      As they approached, the officers noticed that the lights were off inside the house,

16  and they could hear talking inside. The officers knocked and announced, "Police, open

17  the door". The plaintiff initially refused, saying, "You can't come in here. I didn't do

18  anything". The officers opened the outside screen door and, the inner wooded door was

19  open and ajar. The officers could see in and see movement in the darken living room.

20  The officers ordered the plaintiff to come outside and to put his hands up. He did come

21  out and stood on the front porch in front of the door but refused to put his hands up.

22      Officer Boling grabbed the plaintiff's right arm and Officer Strong his left arm.

23  The plaintiff struggled, spun free and fled back into the darken living room with the

24  officers right behind him. There was a struggle, the officers wrestled the plaintiff to the

25  floor and took him into custody. The plaintiff was arrested for making criminal threats.

26  ///

27  ///

28  ///

2

II.    **CONTENTIONS OF LAW:**

    1.    **42 U.S.C. § 1983, First, Fourth and Fourteenth Amendment Violations & California Civil Code § 52.1**

       a.    In determining whether the Defendant Officers violated Plaintiff's right to be free from unreasonable or excessive force, the question is whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  Graham v. Connor, 490 U.S. 386, 397, 104 L.Ed.2d 443, 109 S.Ct. 1865 (1989).

    In Blanford and Jackson v. City of Bremerton, cases involving claims of excessive, non deadly force, the Ninth Circuit reiterated that the Graham standards were applicable:

> "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 . . . . . . This balancing test entails consideration of the totality of the facts and circumstances in the particular case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Blanford, 406 F.3d at 1115.  Similarly, in Jackson, the court held that the "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Jackson, 268 F.3d 646, 651 (9th Cir. 2001).  The Jackson Court said that ". . . the court's consideration of reasonableness must embody allowance for the fact that police officers

1  are often forced to make split-second judgments-in circumstances that are tense,

2  uncertain, and rapidly evolving-about the amount of force that is necessary in a particular

3  situation." *Id.* (citations omitted). "Not every push or shove, even if it may later seems

4  unnecessary in the peace of a judge's chambers' [sic] violates the Fourth Amendment."

5  *Id.* (quoting Graham, 490 U.S. at 396) (citations omitted). "In evaluating the nature and

6  quality of the intrusion, [a court] must consider 'the type and amount of force inflicted'"

7  in making an arrest. *Id.* At 651-52 (quoting Chew v. Gates, 27 F. 3d 1432, 1440 (9th Cir.

8  1994)).

9          Any peace officer who has reasonable suspicion to believe that the person to

10  be  detained has committed a public offense, may use reasonable force to effect the

11  detention, to prevent escape or to overcome resistance. Cal. Penal Code § 835a.  It is

12  unlawful for any person to willfully resist, delay or obstruct a peace officer.  Cal. Penal

13  Code § 148.  If a person has knowledge, or by the exercise of reasonable care should

14  have knowledge, that he is being detained and/or arrested by a police officer, it is the

15  duty of such person to refrain from using force or any weapon to resist such a detention.

16  Cal. Penal Code § 834a.  Police officers have the right to use reasonable force to

17  effectuate an arrest.  Public employees are exempt from liability for an act or omission,

18  exercising due care, in the execution or enforcement of any law.  Cal. Gov't Code §

19  820.4.  Defendant City of Los Angeles is not liable for an injury resulting from an act or

20  omission of its police officers where the police officers are immune from liability.  Cal.

21  Gov't Code § 815.2.

22      b. It is a well-settled exception to the warrant requirement that "exigent

23  circumstances" can justify a warrantless search consistent with the Fourth Amendment.

24  See Warden v. Hayden, 387 U.S. 294, 298 (1967) (upholding a warrantless search where

25  "the exigent circumstances to include 'those circumstances that would cause a

26  reasonable person to believe that entry . . . was necessary to prevent physical harm to the

27  officers or other persons, the destruction of relevant evidence, the escape of the suspect,

28  or some other consequence improperly frustrating legitimate law enforcement efforts.'"

4

1  Menotti v. City of Seattle, 409 F.3d 1113, 1152 (9th Cir. 2005) (quoting United States v.

2  McConney, 728 F.2d 1195, 1199 (9th Cir.1984) (en banc.)).

3      2.    **Qualified Immunity**

4          It is established that qualified immunity is not simply a defense available to

5  public officials in lawsuits arising from the discharge of their official duties.  Rather, it

6  operates as a bar on liability -- an immunity from suit -- that attaches whenever a public

7  official reasonably could have believed that his or her conduct was lawful in light of

8  clearly established law.  Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 536-37 (1991)

9  (qualified immunity "is an immunity from suit rather than a mere defense to liability.");

10  Act Up!/Portland v. Bagley, 988 F 2d 868, 872 (9th Cir. 1993);  *See also* Anderson v.

11  Creighton, 483 U.S. 635, 638 (1987); Malley v. Briggs, 475 U.S. 335, 341 (1986);

12  Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727 (1982).  Accordingly, after the

13  United States Supreme Court's decision in Hunter v. Bryant, the Ninth Circuit changed

14  in their view of qualified immunity when they observed that:

15          "The appropriate inquiry is whether the officers acted reasonably, not

16          whether they had less intrusive alternatives available to them. . . . Requiring

17          officers to find and choose the least intrusive alternative would require them

18          to exercise superhuman judgment."

19  Scott v. Heinrich, 978 F.2d 481 (9th Cir. 1992).  In addition, the Ninth Circuit stated

20  with reference to the doctrine of qualified immunity that:

21          "officials should be shielded from liability for reasonable exercises of

22          judgment in the execution of their duties, even where their conduct is

23          ultimately shown to have been unconstitutional . . . [S]hielding officials

24          from personal liability for reasonable exercises of discretion will help

25          prevent the 'deterrence of able people from public service."

26  Sloman v. Tadlock, quoting Harlow v. Fitzgerald, 457 U.S. 800, 814, 816 (1982)

27          Ultimately, the qualified immunity question is whether the officer acted

28  reasonably under the circumstances; not whether a more reasonable interpretation of the

1  circumstances can be constructed some years later at trial.  <u>Hunter v. Bryant</u>, 502 U.S.

2  224, 112 S.Ct. 534, 536-37 (1991).  To overcome the bar of qualified immunity, Plaintiff

3  must satisfy <u>both</u> elements of a stringent test:  <u>first</u>, Plaintiff must establish that the law

4  governing defendant's conduct was clearly established;  and <u>second</u>, Plaintiff must

5  establish that under that law a reasonable officer could not believe that Defendants'

6  conduct was lawful.  <u>Act Up!/Portland v. Bagley</u>, 988 F 2d 868, 872 (9th Cir. 1993).  If

7  Plaintiff fails to satisfy either element, judgment must be granted as a matter of law in

8  favor of Defendants.  <u>Id</u>.

9       Recently, <u>Saucier v. Katz</u> clarified that qualified immunity involves a stringent

10  two step inquiry that the Plaintiff must overcome: <u>First</u>, the Court determines whether

11  the facts as plaintiff alleges constitute a violation of plaintiff's rights.  If the answer is

12  yes, then <u>Second</u>, the Court must inquire whether the defendant could nonetheless have

13  reasonably but erroneously believed that his conduct did not violate the plaintiff's rights.

14  The second inquiry must be taken "in light of the specific context of the case, not as a

15  general broad proposition." <u>Saucier v. Katz</u>, 150 L. Ed. 2d 272, 281, 121 S. Ct. 2156

16  (2001).  Keeping in mind that qualified immunity "protects all but the plainly

17  incompetent or those who knowingly violate the law," <u>Malley v. Briggs</u>, 475 U.S. 335,

18  341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986), the Court cautioned that "[i]f the law did

19  not put the officer on notice that his conduct would be clearly unlawful, summary

20  judgment based on qualified immunity is appropriate." <u>Saucier v. Katz</u>, *supra,* 150 L. Ed.

21  2d at 281. If Plaintiffs fail to satisfy either element, judgment must be granted as a matter

22  of law in favor of Defendants.  <u>Id</u>.

23       Thus, if a defendant's conduct does not violate clearly established law, the issue of

24  qualified immunity should be resolved by the trial court in favor of the defendants.  "The

25  rule of qualified immunity provides ample support to all but the plainly incompetent or

26  those who knowingly  violate the law."  <u>Schroeder  v Mc Donald</u>, 55 F.3d 454, 461 (9th

27  Cir. 1995).  Put another way, the doctrine of qualified immunity protects a police officer

28  from federal civil rights liability if a reasonable officer **could** have believed that his/her

6

1  actions were constitutional, even if they were not. <u>Wood v. Ostrander</u>, 879 F.2d 583 (9th

2  Cir. 1989).  The question of whether "less intrusive alternatives" existed is not material;

3  only reasonableness - not superhuman judgment - is required.  <u>Scott v. Heinrich</u>, 994

4  F.2d 481 (9th Cir. 1992).

5      3.   <u>**Punitive Damages**</u>

6        Punitive damages are not warranted in this case. <u>Smith v. Wade</u>, 461 U.S.

7  32 (1983).  In this case, the facts have established that the Defendant Officers' conduct

8  was not motivated by evil motive or intent or involves reckless or callous indifference to

9  the federally protected rights of the Plaintiffs.  Additionally, a public entity is not liable

10  for punitive damages in a civil right actions, <u>Newport v. Facts Concert, Inc.</u>, (1981) 69

11  L.Ed.2d. 616.

12      **4.**   <u>**Negligence**</u>

13      In determining whether Defendants were negligent, the question is whether

14  Defendants exercise ordinary care, that is the care that would be exercised by a

15  reasonably prudent peace officer in the same or similar circumstances.  <u>Miller v.</u>

16  <u>Kennedy</u>, 196 Cal.App.3d 141, 144-145, 241 Cal.Rptr. 472 (1987).  A Defendant officer

17  is not liable for an injury resulting from his or her act or omission where the act or

18  omission was the result of the exercise of the discretion vested in him or her, whether or

19  not such discretion be abused. <u>Cal. Gov't Code § 820.2</u>.  A Defendant officer is exempt

20  from liability for an act or omission, exercising due care, in the execution or enforcement

21  of any law. <u>Cal. Gov't Code § 820.4</u>.  Defendant City of Los Angeles is not liable for an

22  injury resulting from an act or omission of its police officers where the police officers are

23  immune from liability. <u>Cal. Gov't Code § 815.2</u>.

24      **5.**   <u>**Monell**</u>

25        In determining liability on the part of the City of Los Angeles, Plaintiff must

26  show that he was deprived of his right to be free from unreasonable search and seizure

27  and to be free from excessive force, and that the City maintained an official policy or

28  custom that caused such constitutional deprivation. <u>Monell v. New York City Dept. of</u>

1  Social Services, 436 U.S. 658, 692, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978).  The City of

2  Los Angeles cannot be held liable *solely* because it employs a tortfeasor; that is, it cannot

3  be held liable in a § 1983 action under any theory of respondeat superior.  Monell, 436

4  U.S. at 691.  In any case alleging municipal liability under § 1983, there must be a

5  "direct causal link between a municipal policy or custom and the alleged constitutional

6  deprivation."  Monell, 436 U.S. at 694.

7        **6.**    **False Arrest/False Imprisonment, Assault & Battery & Penal Code §**

8                **147 & 149**

9           In determining whether Defendants are liable for false arrest, false

10  imprisonment and/or assault & battery, the issues are whether there was reasonable

11  suspicion to detain and/or probable cause to arrest and, whether the forced used was

12  reasonable.  Any peace officer who has reasonable cause to believe that the person to be

13  arrested has committed a public offense, may use reasonable force to effect the arrest, to

14  prevent escape or to overcome resistance.  Cal. Penal Code § 835a.  It is unlawful for any

15  person to willfully resist, delay or obstruct a peace officer.  Cal. Penal Code § 148.  If a

16  person has knowledge, or by the exercise of reasonable care should have knowledge, that

17  he is being detained and/or arrested by a police officer, it is the duty of such person to

18  refrain from using force or any weapon to resist such an arrest.  Cal. Penal Code § 834a.

19  Police officers have the right to use reasonable force to effectuate an arrest.  Public

20  employees are exempt from liability for an act or omission, exercising due care, in the

21  execution or enforcement of any law.  Cal. Gov't Code § 820.4.  Defendant City of Los

22  Angeles is not liable for an injury resulting from an act or omission of its police officers

23  where the police officers are immune from liability.  Cal. Gov't Code § 815.2.

24

25  **III.**    **EVIDENTIARY PROBLEMS**

26       None at this time.

27  **IV.**    **TRIFURCATION OF ISSUES**

28       a)    Punitive Damages.

1   Defendants request trifurcation of punitive damages. That is that the punitive

2   damages claim be tried separately from liability and compensatory damages.

3   With reference to the Federal claims, the Court has discretion and inherent

4   authority when, in the furtherance of convenience or to avoid prejudice, or when separate

5   trials will be conducive to expedition and economy, the court may order separate trials of

6   any claim or of any separate issue. F.R.Civ. P. 42(b).

7   With reference to the State claims, the Court has no discretion. Pursuant to CC §

8   3295 (d), bifurcation of the issue of punitive damages from liability and damages is

9   mandatory.

10   There is no need to reach the punitive damages phase of this case until liability has

11   first been established and the appropriate predicate questions with reference to malice,

12   oppression and/or fraud have been answered in the affirmative. Questioning of the

13   Defendant officer as to his financial condition before those two issues are established ,

14   would be personally embarrassing to Officers Strong and Boling and could possibly

15   confuse and prejudice the jury as to their deliberation regarding liability.

16   Additionally, bifurcation presents no prejudice to the Plaintiffs or to their case

17   and quite possibly will save the Court and the Jury needless time in deliberation.

18       b)   Monell.

19   With reference to trifurcation of the Monell issue, the Supreme Court in the case

20   of City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 15571, 89 L.Ed2d 806

21   (1986), stated that the policies and customs of a police department are "quite beside the

22   point" if its officers' acts are constitutionally permissible. This principle is so basic that

23   a trial court may bifurcate the issues of constitutional deprivation and municipal policy;

24   if no constitutional deprivation is proved, individual and municipal defendants prevail.

25   The jury does not hear evidence of the municipal policy, because it would be "beside the

26   point." City of Los Angeles v. Heller, 475 U.S. 796, 799.

27   **V.   JURY DEMAND**

28   A timely demand for jury trial has been made by the Defendants.

9

## VI.   ATTORNEYS FEES

Pursuant to 42 U.S.C. Sections 1988, attorney's fees are recoverable by the prevailing party.

## VII.   ABANDONMENT OF ISSUES

None at this time

## VIII. WITNESS LIST

A witness list will be filed under separate cover.

## IX.   EXHIBIT LIST

A exhibit list will be filed under separate cover.

DATED: March 15, 2010

CARMEN A. TRUTANICH, City Attorney
GARY G. GEUSS, Chief Asst. City Attorney
CORY M. BRENTE, Supv. Assistant City Attorney

By: _____
RICHARD M. ARIAS, Deputy City Attorney

Attorneys for Defendant CITY OF LOS ANGELES, MICHAEL STRONG and TYLER BOLING